FILED
U.S. DISTRICT COURT
2014 MAY 14 A 10:43
DISTRICT OF UTAH
BY: DEPUTY CLERK

DAVID B. BARLOW, United States Attorney (#13117)
BRENT D. WARD, Trial Attorney, Criminal Division, U.S. Department of Justice (#3377)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>BRANDON BENSON,<br>Defendant. | INDICTMENT<br>18 U.S.C. § 1343 (Wire Fraud)<br>(Counts 1-4)<br>Case: 2:14cr00246<br>Assigned To : Shelby, Robert J.<br>Assign. Date : 5/14/2014<br>Description: USA v. |

The Grand Jury charges:

SCHEME TO DEFRAUD

1. At times material to this indictment, defendant BRANDON BENSON, was an individual who resided in Salt Lake City, Utah and Orange County, California

and who, though he had no previous experience in the oil industry, offered and sold investments in purported "oil deals" in Nigeria.

TAO

2. From on or about an unknown date in 2009 7 until the date of this indictment

BRANDON BENSON,

the defendant, did devise and intend to devise a scheme and artifice to defraud investors whom he solicited for money to invest in purported "oil deals" in Nigeria.

3. It was part of the scheme and artifice to defraud for the defendant to obtain money from investors based on fraudulent misrepresentations and omissions, and to use that money for purposes not disclosed to the investors, including but not limited to using the investors' money to pay for the defendant's personal expenses and to support his lavish lifestyle.

4. It was further part of the scheme and artifice to defraud for the defendant to use money obtained from new investors to pay money owed to earlier investors and, in some cases, to give earlier investors a false sense that oil deals were actually taking place and were producing a return on their investments. In this respect, the defendant, at times, conducted a "Ponzi" scheme and the payments to earlier investors were "Ponzi payments".

5. It was further part of the scheme and artifice to defraud that the defendant recruited investors to invest in purported "oil deals" in Nigeria.

6. It was further a part of the scheme and artifice to defraud that in speaking with investors the defendant described the investment as an opportunity to participate in and profit from oil transactions in which shipments of oil would be purchased at locations in Africa and transported and sold at higher prices at a destination elsewhere in Africa.

7. It was further a part of the scheme and artifice to defraud that the defendant made and caused to be made various false and fraudulent representations about the investment that was being offered to investors. Each investor was told one or more of the following false representations:

A. That defendant was a successful broker of oil transactions in Africa.

B. That investors' funds would be used only as a guarantee or other form of collateral for the purchase of shipments of oil in Africa.

C. That investors' funds would be deposited in a "protected account" in a banking institution and would be safe and secure. The investors' funds were sometimes described as a "Guaranteed Oil Fund".

D. That investors' funds would not be disbursed in any way.

E. That investors' funds would earn a return between forty percent and one hundred twenty percent per year.

F. That investors' returns would accrue and be paid to the investors monthly.

G. That investors' funds would be returned to them upon request by the investors.

H. That in any event investors' funds would be returned to them within a specified period of time, for example within sixty days following the date of investment.

8. It was further a part of the scheme and artifice to defraud that the defendant omitted and failed to tell the investors one or more of the following material omissions:

A. That the defendant had previously lost significant amounts of money in oil transactions in Africa.

B. That investors' money would not be used only as a guarantee or other form of collateral for the purchase of oil shipments.

C. That investors funds would be disbursed and were disbursed for purposes other than those represented to the investors, including paying the defendant's personal expenses, funding his extravagant life style, and paying returns to other investors in what amounted to a "Ponzi" scheme.

D. That investors' funds earned no return and that any funds paid back to investors came from other investors' funds.

E. That investors' funds were not returned on request by the investors,

except to the extent that relatively small payments were made by the defendant to some investors using other investors' funds.

F. That no investors' had received their money back.

G. That no oil transactions took place based on the use of funds provided by the aforementioned investors.

9. It was further a part of the scheme and artifice to defraud that the defendant's misrepresentations and omissions were material to the investors' investment decisions and investors would not have invested their money in the defendant's scheme had they known the omitted facts referred to in paragraph 8 above, or had the misrepresentations referred to in paragraphs 6-7 above not been made to them by the defendant.

10. It was further a part of the scheme and artifice to defraud that beginning in or about September 2007 and continuing until in or about March 2008 the defendant made one or more of the false and fraudulent representations and omissions referred to in the preceding paragraphs to T.B. for the purpose of obtaining approximately $600,000 from T.B. as part of the Nigerian oil fraud scheme described above.

11. It was further a part of the scheme and artifice to defraud that in or about

March 2008 the defendant caused T.G. to invest approximately $100,000 in the Nigerian oil fraud scheme described above based on false and fraudulent representations and omissions.

12. It was further a part of the scheme and artifice to defraud that in or about July 2009 the defendant made one or more of the false and fraudulent representations and omissions referred to in the preceding paragraphs to R.W. for the purpose of obtaining approximately $250,000 from R.W. as part of the Nigerian oil fraud scheme described above.

13. It was further a part of the scheme and artifice to defraud that in or about November and December 2009 the defendant made one or more of the false and fraudulent representations and omissions referred to in the preceding paragraphs to D.B. for the purpose of obtaining approximately $60,000 from D.B. as part of the Nigerian oil fraud scheme described above.

14. It was further a part of the scheme and artifice to defraud that in or about November and December 2008 the defendant made one or more of the false and fraudulent representations and omissions referred to in the preceding paragraphs to D.W. for the purpose of obtaining approximately $40,000 from D.W. as part of the Nigerian oil fraud scheme described above.

15. It was further a part of the scheme and artifice to defraud that beginning in or about January 2010 and continuing until in or about April 2010 the defendant caused J.H. to invest approximately $75,000 in the Nigerian oil fraud scheme described above based on false and fraudulent representations and omissions.

16. It was further a part of the scheme and artifice to defraud that in or about May 2010 the defendant made one or more of the false and fraudulent representations and omissions referred to in the preceding paragraphs to I.A. for the purpose of obtaining approximately $275,000 from I.A. as part of the Nigerian oil fraud scheme described above.

<u>COUNTS 1-4</u>
18 U.S.C. §§ 1343 and 2(a)
(Wire Fraud)

17. The Grand Jury incorporates by reference paragraphs 1-16 as if fully stated herein.

18. On or about each of the dates listed below, in the Central Division of the District of Utah, the defendant, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing said scheme and artifice to defraud and in attempting to do so, did cause

certain writings, signs, signals, and sounds to be transmitted in interstate commerce, each such transmission being in a separate count of this indictment;

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | 11/06/2009 | Email from defendant BRANDON BENSON (California) to D.B. (Utah) containing wire transfer instructions |
| 2 | 11/13/2009 | Wire transfer of $25,500 from D.W.'s America First Credit Union Bank account #7880 (Utah) to defendant BRANDON BENSON's Wells Fargo Bank account #2537 (California) |
| 3 | 12/03/2009 | Wire transfer of $14,500 from D.W.'s America First Credit Union Bank account #7880 (Utah) to defendant BRANDON BENSON's Wells Fargo Bank account #2537 (California) |
| 4 | 06/02/2010 | Wire transfer of $4,700 from defendant BRANDON BENSON's Wells Fargo Bank account #4682 (California) to J.H's account Beehive Credit Union account #8876 (Utah) |

all in violation of 18 U.S.C. § 1343 and § 2.

A TRUE BILL:

/s/

FOREPERSON OF THE GRAND JURY

DAVID B. BARLOW
United States Attorney

BRENT D. WARD
Trial Attorney
Criminal Division
U.S. Department of Justice